UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GREG BYLICKI,

      Plaintiff,

v.                                        Case No. 8:15-cv-1177-T-24 MAP

MCGEE TIRE STORES, INC.,

      Defendant.

_____/

## ORDER

This cause comes before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 27). Plaintiff opposes the motion. (Doc. No. 32). As explained below, the motion is denied.

**I.  Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. (citation omitted). When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. See id. (citation omitted).

**II. Background**

Plaintiff Greg Bylicki is a white male who is married to an African-American woman. He was re-hired by Defendant McGee Tire Stores, Inc. in October of 2011 as a Service Manager.[1] (Doc. No. 33-1, depo p. 24). Plaintiff was later transferred to Defendant's South Florida store in Lakeland, and he reported to David Pierson, the store manager. Pierson reported to Kevin McGee, who was the district manager.

In April or May of 2012, Plaintiff heard Pierson use the "N-word" to refer to a customer. (Doc. No. 33-1, depo p. 50-51). This offended Plaintiff and made him uncomfortable. Plaintiff knew that Pierson did not know that he was married to an African-American woman, so Plaintiff brought his wife to the store in hopes that Pierson would not make further racially offensive comments. (Doc. No. 33-1, depo p. 52-53). However, Pierson continued to make racially offensive comments. (Doc. No. 33-1, depo p. 56). Additionally, the "N-word" and the related word, "nigga," were used too many times to count by other employees around the auto shop where Plaintiff worked. (Doc. No. 25-1, depo p. 20; Doc. No. 40, ¶ 9). Furthermore, Plaintiff was required to take care of the African-American customers. (Doc. No. 25-1, depo p. 24-25; Doc. No. 40, ¶ 11).

By the middle to end of September of 2012, Plaintiff complained to McGee about the racial harassment based on his marriage to an African-American woman and asked to be transferred to a different store. (Doc. No. 40, ¶ 17). McGee did not investigate Plaintiff's complaint at that time, and he denied Plaintiff's request for a transfer.

On Sunday, October 7, 2012, Plaintiff got sick, and he texted Pierson that evening to let

---

[1]Plaintiff worked for Defendant on two separate occasions in the past.

him know. (Doc. No. 40, ¶ 18). The next morning, Plaintiff texted Pierson to let Pierson know that he was going to see a doctor. (Doc. No. 40, ¶ 19). Plaintiff was diagnosed with strep throat, and the nurse gave him a note saying that he could return to work on Wednesday, October 10th. (Doc. No. 40, ¶ 20). That evening (Monday, October 8th), Plaintiff texted Pierson to let him know about the strep throat diagnosis. (Doc. No. 40, ¶ 21). On Tuesday, October 9th, Plaintiff texted the nurse's note to Pierson so that Pierson would know that Plaintiff would be back to work on October 10th. (Doc. No. 40, ¶ 22).

On Wednesday, October 10th, Plaintiff was still sick, so he texted Pierson that he was going back to see the doctor. (Doc. No. 40, ¶ 23). The nurse extended Plaintiff's sick leave and stated that he could return to work on Thursday, October 11th. (Doc. No. 40, ¶ 23). After seeing the nurse, Plaintiff texted Pierson to update Pierson and to let Pierson know that the nurse said to return to see her if he did not feel better the next day. (Doc. No. 40, ¶ 23).

On Thursday, October 11th, Plaintiff still did not feel better, and he texted Pierson that morning that he was going back to see the nurse. (Doc. No. 40, ¶ 24). After Plaintiff saw the nurse, she extended his sick leave and stated that he should be able to return to work on Monday, October 15th. (Doc. No. 40, ¶ 24). Plaintiff forwarded the nurse's note to Pierson that afternoon. (Doc. No. 40, ¶ 24).

On Friday, October 12th, Pierson texted Plaintiff twice early in the morning. (Doc. No. 40, ¶ 25). Plaintiff called Pierson at 8:00 a.m. and spoke with Mike Riley. (Doc. No. 40, ¶ 25). Riley said to Plaintiff, "Man, I heard you were fired because you were acting like a 'nigger!'" (Doc. No. 40, ¶ 25). When Plaintiff spoke with Pierson on October 12th, Plaintiff explained that he was still sick and was not coming into work. (Doc. No. 33-1, depo p. 57). In response,

3

Plaintiff heard Pierson pull the phone away from his mouth and say (in reference to Plaintiff), "Just like a nigger!" (Doc. No. 40, ¶ 25). Thereafter, Pierson said that Plaintiff would need to contact McGee before Plaintiff came back to work on Monday. (Doc. No. 40, ¶ 25).

On the morning of Saturday, October 13th (which was a working day for Defendant), Plaintiff texted McGee and informed McGee that he was still sick.[2] On Monday, October 15th, Plaintiff called Pierson and said that he was returning to work. (Doc. No. 40, ¶ 28). Pierson responded that Plaintiff could not return until Plaintiff spoke with McGee. (Doc. No. 40, ¶ 28).

Plaintiff tried to contact McGee several times on the morning of October 15th. (Doc. No. 40, ¶ 28; Doc. No. 33-1, depo p. 80-81; Doc. No. 27-5, p. 21). McGee finally called Plaintiff back and told Plaintiff that he was fired because McGee needed someone responsible in Plaintiff's position. (Doc. No. 40, ¶ 28; Doc. No. 33-1, depo p. 85). Prior to McGee telling Plaintiff that he was fired, McGee knew that Plaintiff had strep throat and that Plaintiff had the nurse's notes stating that he was unable to return to work until October 15th. (Doc. No. 34-2, depo p. 165, 171, 174). After McGee told Plaintiff that he was fired, McGee would not answer Plaintiff's calls, so Plaintiff sent texts to McGee expressing his confusion. (Doc. No. 33-1, depo p. 86). Specifically, in the last text to McGee, Plaintiff stated:

> So here it is a week after getting strep... still sick[.] I don't [k]now what to say after david [Pierson] made me out to be a piece of crap for having strep...I have doctors note for the time I've missed. What going on here[.] y do I feel like its my fault I got this shit and because im sick people tell me that I lost my job. Y, havent I showed the company I care? I also expressed that me and david do not work well together!!! What do u want from me?

(Doc. No. 26-2, p. 61).

---

[2]Defendant is closed on Sundays.

Curiously, Defendant's files indicate that Plaintiff was terminated for job abandonment on October 12th, not October 15th. (Doc. No. 34-2, p. 115). Job abandonment is described in Defendant's Employee Handbook as follows:

> An employee who fails to report to work and fails to notify his/her supervisor of the reason for absence from work for three consecutive workdays will be considered to have abandoned his/her job. The employee is deemed to have quit and will be terminated immediately.

(Doc. No. 27-7, p. 28). However, the evidence reveals that Plaintiff kept Pierson informed that he was absent from work due to strep throat, and Plaintiff gave Pierson the nurse's notes saying that he was out sick and would return to work on October 15th.

Prior to telling Plaintiff that he was fired, McGee spoke with Pierson. (Doc. No. 34-2, depo p. 179). McGee told Pierson that McGee was going to terminate Plaintiff, and Pierson stated that he completely agreed with McGee. (Doc. No. 34-2, depo p. 179).

McGee stated in his deposition that Pierson had input in the decision to fire Plaintiff. (Doc. No. 34-1, depo p. 92-93). McGee further stated in his deposition that Pierson's input consisted of Pierson's prior coaching sessions with Plaintiff. (Doc. No. 34-1). McGee contends that these coaching sessions were Pierson's prior write-ups of Plaintiff. (Doc. No. 34-1, depo p. 65-66; Doc. No. 27-13). However, there is evidence before the Court that Defendant had no record of these write-ups in August of 2013—almost a year after Plaintiff was fired. (Doc. No. 34-2, p. 118). Instead, these write-ups were found and turned over to Plaintiff's counsel on April 18, 2016.

The document containing these alleged write-ups consisted of vague descriptions of Plaintiff leaving work early or coming in late due to being sick, taking his mother to the emergency room, taking his child to the doctor, picking his child up from school, taking care of a

5

plumbing issue at his mother's house, and seeing his brother who was in town from the Navy. (Doc. No. 27-13). The document does not indicate how early Plaintiff left work or how late he came in to work. (Doc. No. 27-13). Furthermore, Defendant's corporate representative gave testimony that conflicted with McGee's testimony, as the corporate representative testified that the document containing these alleged write-ups was not related to Plaintiff's termination. (Doc. No. 36-1, depo p. 118-19, 124). The corporate representative described these alleged write-ups as informal conversation pieces, not written warnings. (Doc. No. 36-1, depo p. 123). However, Pierson testified during his deposition that he did not recall ever sitting down with Plaintiff and going over the issues set forth in the document. (Doc. No. 30-1, depo p. 63).

Plaintiff's position was filled by John Burns. (Doc. No. 40, ¶ 31). Burns is a white male who is not married to an African-American woman. (Doc. No. 40, ¶ 31).

After his termination, Plaintiff filed this lawsuit, in which he asserts three claims. First, he asserts a race discrimination claim under § 1981. Second, he asserts a hostile work environment claim under § 1981. Third, he asserts a retaliation claim under § 1981.

### III.  Motion for Summary Judgment

Defendant filed the instant motion for summary judgment, arguing that it is entitled to summary judgment on all three claims. The Court has considered Defendant's motion and all of the arguments therein. Defendant essentially disputes almost all of the relevant facts in this case. As such, genuine issues of material fact exist that preclude summary judgment. The Court will briefly explain, without going through all of Defendant's arguments, why Defendant's motion for summary judgment is denied.

### A. Framework for Analyzing Plaintiff's Claims

Plaintiff asserts his claims under § 1981, which has the same requirements of proof and uses the same analytical framework as claims under Title VII. See Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). Specifically, the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), burden-shifting framework applies to this circumstantial case. See id. at 1331.

### B. Race Discrimination

Plaintiff claims that he was discriminated against, and that the discrimination culminated in his termination, due to his marriage to an African-American woman. Plaintiff has pointed to evidence that: (1) he was married to an African-American woman;[3] (2) he was qualified to do his job;[4] (3) he was terminated; and (4) he was replaced by John Burns, a white man who is not married to an African-American woman. This is sufficient to establish a prima facie claim of discrimination. See Flowers v. Troup County, GA, School District, 803 F.3d 1327, 1336 (11th Cir. 2015).

Furthermore, Plaintiff has provided evidence that Defendant's purported reason for terminating him—job abandonment and/or failing to show up at work on Monday, October 15th—is not worthy of credence and may be a pretext for discrimination. To begin with, job abandonment is described in Defendant's Employee Handbook as failing to report to work while failing to notify his supervisor (Pierson) of the reason for his absence from work for three

---

[3]Courts have recognized that § 1981 prohibits discrimination based on an interracial marriage. See Parr v. Woodmen of the World Life Ins. Co., 791 F.2d 888, 890 (11th Cir. 1986).

[4]Doc. No. 34-1, depo p. 76-77.

consecutive workdays. However, the evidence reveals that Plaintiff kept Pierson informed that he was absent from work due to strep throat, and Plaintiff gave Pierson the nurse's notes saying that he was out sick and would return to work on October 15th. Furthermore, McGee knew that Plaintiff had strep throat and that Plaintiff had the nurse's notes stating that he was unable to return to work until October 15th. Thus, it does not appear that Defendant had an honest, good faith belief that Plaintiff abandoned his job, as defined in Defendant's Employee Handbook.

To the extent that Defendant contends that Plaintiff was fired for simply failing to show up to work on Monday, October 15th, there is evidence in the record that Plaintiff attempted to go in to work, but Pierson told Plaintiff not to come in until Plaintiff had spoken to McGee. There is also evidence that Plaintiff tried to contact McGee several times on the morning of October 15th, and when McGee finally called Plaintiff back, McGee told Plaintiff that he was fired.

The Court also notes that there is conflicting evidence in the record regarding the date of Plaintiff's termination—October 12th or 15th. Likewise, McGee's testimony during Plaintiff's unemployment compensation appeal hearing about the events surrounding Plaintiff's termination conflicts with McGee's deposition testimony in this case. (Doc. No. 27-5, depo p. 12-22; Doc. No. 34-2). Furthermore, there is conflicting evidence regarding whether there were prior write-ups for Plaintiff and whether those write-ups were part of the termination decision. Given all of this evidence, the Court finds that genuine issues of material fact exist that preclude summary judgment on Plaintiff's discrimination claim.

### C. Hostile Work Environment

Plaintiff also claims that he was subjected to a hostile work environment. The Court has

8


not set forth in detail all of the alleged racist remarks, but the Court has reviewed the record and concludes that there is evidence that supports Plaintiff's hostile work environment claim.

Defendant argues that even if Plaintiff can establish a prima facie claim for hostile work environment (which it disputes), it would still be entitled to summary judgment based on the Ellerth/Faragher affirmative defense. The Court rejects this argument for two reasons.

First, the Ellerth/Faragher affirmative defense is available only if the alleged hostile work environment did not culminate in an adverse employment action. See Walton v. Johnson & Johnson Services, Inc., 347 F.3d 1272, 1280–81 (11th Cir. 2003)(citations omitted). However, Plaintiff alleges that the hostile work environment culminated in his termination, and as such, the affirmative defense would not be available.[5]

Second, the affirmative defense would require Defendant to prove two elements: (1) that Defendant exercised reasonable care to prevent and correct promptly the harassing behavior, and (2) that Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by Defendant or to avoid harm otherwise. See id. at 1286 (citation omitted). Here, Plaintiff complained to McGee about the harassment in September of 2012, and genuine issues of material fact exist regarding whether Defendant acted promptly to investigate his complaint and correct the situation.

Accordingly, genuine issues of material fact exist regarding the availability of the affirmative defense, as well as Defendant's ability to satisfy the affirmative defense. Therefore, the Court denies Defendant's motion for summary judgment on Plaintiff's hostile work

---

[5] The evidence is conflicting regarding how much input Pierson had in the decision to terminate Plaintiff.

environment claim.

### D. Retaliation

Finally, Plaintiff asserts a retaliation claim based on his complaint to McGee during the middle to end of September of 2012 and Plaintiff's subsequent termination a few weeks later. Again, to the extent that Defendant argues that Plaintiff's failure to show up for work on October 15th was a legitimate reason for firing Plaintiff, the Court has already explained that there is evidence that this alleged legitimate reason may be pretextual. Accordingly, the Court concludes that genuine issues of material fact exist that preclude summary judgment on Plaintiff's retaliation claim.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Defendant's Motion for Leave to File a Reply (Doc. No. 51) is **DENIED**.

(2) Defendant's Motion for Summary Judgment (Doc. No. 27) is **DENIED**.

(3) The pretrial conference is set for *October 4, 2016.* The parties' joint pretrial statement must be filed by *September 29, 2016*.

(4) The parties must file all pretrial motions, including motions in limine, by *September 12, 2016.* Each party may file *one* motion in limine containing all of their arguments in a single document not to exceed 25 pages. Responses thereto must be filed by *September 26, 2016.*

**DONE AND ORDERED** at Tampa, Florida, this 15th day of August, 2015.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record

10